UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

3M Company and
3M Innovative Properties Company,

    Plaintiffs,

v.

**MEMORANDUM OPINION AND ORDER**
Civil No. 10-2630 (MJD/FLN)

Avery Dennison Corporation,

    Defendant.

_____

John C. Adkisson, Ann N. Cathcart Chaplin and Geoff D. Biegler, Fish & Richardson P.C., Kevin H. Rhodes and William D. Miller, 3M Innovative Properties Company and M. Sean Royall, Michael L. Raiff, and Daniel S. Floyd, Gibson, Dunn & Crutcher, LLP, Counsel for Plaintiffs.

Kurt J. Niederluecke, and Lora M. Friedemann, Fredrikson & Byron, P.A. and Charles K. Verhoeven, David Bilsker, Christopher E. Stretch, and James E. Baker, Quinn Emanuel Urquhart & Sullivan, LLP, Counsel for Defendant.

_____

This matter is before the Court on Defendant Avery Dennison Corporation's ("Avery") motions for partial summary judgment of indefiniteness (Doc. No. 288) and for non-infringement of claim 22 of the '983 patent (Doc. No. 303).

## I. Background

This action involves five patents, the rights, title and interest having all been assigned to Plaintiffs 3M Company and 3M Innovative Properties Company ("3M"), which cover different aspects of retroreflective sheeting technology for use on roadway signs. In the Amended Complaint, 3M alleges that Avery makes, uses, and sells products, including the OmniCube T-11500 Prismatic Reflective Film, that embodies the inventions claimed in the patents-in-suit.

Approximately one month after this action was commenced, 3M moved for preliminary injunctive relief, seeking to enjoin Avery from launching and distributing the accused OmniCube products. The motion was denied, based in part on the Court's finding that Avery had presented a substantial question as to the validity of the '983 and '386 patents and that 3M did not materially challenge Avery's expert opinion as to whether the patents are invalid as anticipated or obvious. (Memorandum Opinion and Order dated December 21, 2010 (Doc. No. 90).) Thereafter, the Court issued its decision as to the disputed claim terms. (Memorandum Opinion and Order dated March 22, 2012 (Doc. No. 230).)

## II. Standard for Summary Judgment

Summary judgment is appropriate if, viewing all facts in the light most

favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 (c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact.  Celotex, 477 U.S. at 323.  This burden can be met "by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.  The party opposing summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial.  Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**III.    Motion for Partial Summary Judgment of Indefiniteness**

The Court construed the claim term "varied/vary in opposition" as follows: "to intentionally provide within a given cube corner element a 1-2 dihedral angle error and a 1-3 dihedral error that are different in magnitude and/or sign."  The Court also construed "nominally parallel" as follows: "no purposeful variation from parallel using a groove-forming machine with a degree of precision of at least ¼ arc minute."

Avery argues that as these terms have been construed to include an intent

or purpose requirement, a person of ordinary skill in the art cannot independently conclude that a particular piece of retroreflective sheeting, article or lamina infringes because such analysis requires a determination of the subjective intent of the person who made such sheeting, article or lamina. Further, two identical pieces of sheeting could have different infringement findings depending on the subjective intent of their makers. Avery thus argues that the asserted claims that include these terms are invalid for indefiniteness. (Claims 1-4 and 11 of the '386 patent; claims 1 and 10 of the '426 patent; and claims 19, 20, 22 and 26 of the '983 patent.)

**A.  Standard for Indefiniteness**

By statute, patent claims must "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention." 35 U.S.C. § 112 (b). The law further requires the claims to be sufficiently definite to inform the public of their scope so as to avoid infringement. Halliburton Energy Servs., Inc. v. M-I LLC, 514 F.3d 1244, 1249 (Fed. Cir. 2008). "The statutory requirement of particularity and distinctness in claims is met only when [the claims] clearly distinguish what is claimed from what went before in the art and clearly circumscribe what is foreclosed from future enterprise." United Carbon

4

Co. v. Binney & Smith Co., 317 U.S. 228, 236 (1942). "The definiteness requirement, however, does not compel absolute clarity. Only claims 'not amenable to construction' or 'insolubly ambiguous' are indefinite." Datamize, LLC v. Plumtree Software, Inc., 417 F.3d 1342, 1347 (Fed. Cir. 2005) (citing cases). Instead, where claim terms can be given a reasonable meaning, the definiteness requirement is met. Id.

> Of course, claims are not indefinite merely because they present a difficult task of claim construction. Instead, "[i]f the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds." Proof of indefiniteness requires such an exacting standard because claim construction often poses a difficult task over which "expert witnesses, trial courts, and even the judges of this court may disagree." Nevertheless, this standard is met where an accused infringer shows by clear and convincing evidence that a skilled artisan could not discern the boundaries of the claim based on the claim language, the specification, and the prosecution history, as well as her knowledge of the relevant art area.

Halliburton, 514 F.3d at 1249 (internal citation omitted).

**B.    Analysis**

Avery asserts that as the terms at issue require an intent or purpose requirement, there is no objectively verifiable way to determine whether this requirement is met in an apparatus patent. As a result, Avery asserts the claims are invalid as indefinite. See, e.g., Halliburton, 514 F.3d at 1254-55; Geneva

5

Pharm., Inc. v. GlaxoSmithKline PLC, 349 F.3d 1373, 1384 (Fed. Cir. 2003); Morton Intern., Inc. v. Cardinal Chemical Co., 5 F.3d 1464, 1470 (Fed. Cir. 1993).

Avery further asserts that only where the patent involves a method can a claim term include an intent requirement. See, e.g., Koito Mfg. Co. v. Turn-Key-Tech, LLC, 381 F.3d 1142 (Fed. Cir. 2004) (involving a method patent); Combined Sys., Inc. v. Defense Tech. Corp. of Am., 350 F.3d 1207 (Fed. Cir. 2003) (same). Avery argues a method claim can only be directly infringed by the persons performing the method and would-be infringers of a method claim with an intent element need only determine their own intent to determine whether they infringe. By contrast, infringement liability for an apparatus claim runs to anyone who makes, uses, offers to sell or sells the allegedly infringing article. To determine infringement of an apparatus claim with an intent element, a seller or user of an article would need to determine the subjective mind set of a different person - the article's maker.

The Court finds that there is no binding authority for the position that an apparatus claim may not include an intent element. Of the two cases cited by Avery in support, one stands for the proposition that a court should not read an intent requirement into a claim where it would be inconsistent with the claim

6

language and the specification, ADC Telecomm'ns Inc. v. Switchcraft, Inc., No 04-1590 ADM/JSM, 2005 WL 2206115, at *4 (D. Minn. Sept. 9, 2005) (finding "waveguide" could not be construed to include an intent element as the concept of intent is completely absent from term) and the other was vacated due to settlement. TriQuint Semiconductor, Inc. v. Avago Tech. Ltd., No. 09-1531-PHX-JAT, 2012 WL 1432529 (D. Ariz. Apr. 25, 2012).

In addition, the test for indefiniteness is whether a person of ordinary skill in the art could readily determine the scope of the claims. Halliburton, 514 F.3d at 1249. Avery's "would-be-infringer" hypothetical, however, addresses the difficulty of avoiding infringement, not the indefiniteness of the claim. Invitrogen Corp. v. Biocrest Mfg., L.P., 424 F.3d 1374, 1384 (Fed. Cir. 2005) ("The test for indefiniteness does not depend on a potential infringer's ability to ascertain the nature of its own accused product to determine infringement, but instead on whether the claim delineates to a skilled artisan the bounds of the invention.")

In response to Avery's motion, 3M has demonstrated that a person of ordinary skill in the art can determine the scope of those claims that include an intent requirement by reviewing internal design documents or through witness

testimony.  (See, e.g., Declaration of John Adkisson, Ex. 3 (Galicia Dep. at 81, 218-19 (testifying that he programmed the machine so that the side grooves in the Avery product were parallel); Ex. 4 (Chapman email discussing design, and plan to deliberately vary dihedral angle variation); Ex. 6.)  Avery's witnesses have had little trouble understanding and responding to 3M's questions regarding intent.  (Id. Ex. 3 (Galicia Dep. at 81 ("Q: When you cut the side grooves for the Omnicube blades, is it your intention to cut them parallel with one another? A: Yes.")

Because the Court finds that those claims that include the terms "vary/varied in opposition" and "nominally parallel" are not indefinite, Avery's motion will be denied.

**IV.    Motion for Partial Summary Judgment of Non-Infringement**

Avery asserts that on June 15, 2012, 3M served an expert report in which the expert did not opine that the OmniCube product infringes claim 22 of the '983 patent.  Specifically, claim 22 recites retroreflective sheeting containing side grooves that are "nonparallel by amounts ranging from greater than nominally parallel to approximately 1°."  With respect to claim 22, 3M's expert, Dr. James Leger, did not provide an explicit opinion that OmniCube sheeting infringed

8

claim 22. Instead, he opined that "the cube corner elements in OmniCube™ Sheeting have a face defined by side groove set wherein the side grooves are nominally parallel to each other." (Friedemann Decl., Ex. C ¶ 255 (Leger Expert Report).) Since claim 22 required nonparallel side grooves, sheeting that necessarily has side grooves that are nominally parallel to each other will not meet the limitations of claim 22. Dr. Leger noted, however, that "if Avery comes forward with data indicating that the grooves within a side groove set are nonparallel I reserve the right to change by opinion regarding this claim." (Id. ¶ 256.) It is Avery's position that as 3M bears the burden of proving infringement for each asserted claim, 3M cannot defeat or delay summary judgment based on Dr. Leger's speculation that Avery might come forward with evidence showing the grooves within the groove set are nonparallel.

3M concedes that its expert did opine that Avery's product infringed claim 22 in his initial report. Dr. Leger's opinions were based on the understanding that reference to the degree of precision of ¼ arc minute included in the Court's construction of "nominally parallel" refers to the degree of precision of the groove-forming machine. (Id. ¶ 209.) In his Rebuttal Report, Avery's expert, Dr. Russell Chipman, explained that he interpreted the Court's construction of

"nominally parallel" as having two aspects that "work in tandem to refer to the degree of precision to which the grooves are parallel." (Adkisson Decl. Ex. D at ¶ 84.) "In other words, if the person cutting the grooves intends for them to be parallel, then the resulting grooves should be parallel within ¼ arc minute." (Id.)

3M asserts that Dr. Chipman has not read the intent and degree of precision requirements in tandem; he has instead read them both out of the construction, focusing instead on the measurements of the grooves, and inferring intent and degree of precision from such measurement. Under his interpretation, Dr. Chipman opined that the accused products do not include the nominally parallel limitation of claim 19 because the side grooves are more than .00417° (¼ arc minute) off parallel.

3M further argues that Dr. Chipman's interpretation of nominally parallel contradicts the Court's construction of the term. For example, under Dr. Chipman's interpretation, it makes no difference whether the groove maker intended to make parallel grooves because he only looks at the result. 3M further asserts that Dr. Chipman determines whether or not a groove-forming machine with a degree of precision of at least ¼ arc minute was used not by looking at the machine itself, but by looking at the result. In other words, Dr. Chipman's

interpretation simply means that the grooves, as measured, must be parallel within ¼ arc minute.

3M asks the Court to clarify the meaning of nominally parallel, as the parties' experts have adopted different meanings. See Cordis Corp. v. Boston Scientific Corp., 658 F.3d 1347, 1355 (Fed. Cir. 2011) (finding that no rule of law prevents a party from seeking to clarify the scope of claim construction, and that the district court may clarify its previous construction); Edwards Lifesciences LLC v. Cook Inc., 582 F.3d 1322, 1334 (Fed. Cir. 2009) (finding that district court was correct to look to the specification to clarify its initial construction).

Because the parties clearly dispute the meaning of the Court's construction of "nominally parallel" the Court will clarify its construction of the term. As stated in the Order on claim construction, the specification defined "nominally parallel" with respect to grooves as "grooves wherein no purposeful variation has been introduced within the degree of precision of the groove-forming machine." (Order (Doc. No. 230 at 36).) The Court further inserted a numerical reference with respect to the groove-forming machine in order to provide clarity as to what would constitute parallel, nominally parallel or substantially parallel. (Id.) Reference to ¼ arc minute was supported by the specification. (Id.)

Accordingly, the Court construed "nominally parallel" as "no purposeful variation from parallel using a groove-forming machine with a degree of precision of at least ¼ arc minute." (Id. 36-37.)

The Court now clarifies this construction as follows. First, to determine whether the accused product infringes those claims that include "nominally parallel" a determination must be made as to whether the accused infringer intended to vary from parallel. Second, a determination must be made as to whether the accused infringer used a groove-forming machine with a degree of precision of at least ¼ arc minute.

Given this clarification, which is consistent with the interpretation adopted by Dr. Leger, the Court finds that Avery is entitled to summary judgment as to non-infringement of claim 22 of the '983 patent. Claim 22 includes the requirement of side grooves "wherein at least two grooves within the set are nonparallel by amounts ranging from greater than nominally parallel to approximately 1°." In his expert report, however, Dr. Leger found that "it is my opinion that the cube corner elements in OmniCube™ Sheeting have a face defined by a side groove set wherein the side grooves are nominally parallel to each other." (Adkisson Decl., Ex. C (Leger Report ¶ 255).) Accordingly, the

Court finds that Avery had demonstrated no genuine issue of material fact precludes summary judgment as to non-infringement of claim 22 of the '983 patent.[1]

IT IS HEREBY ORDERED that:

1. Defendant Avery Dennison's Motion for Partial Summary Judgment of Indefiniteness [Doc. No. 288] is DENIED; and

2. Defendant Avery Dennison's Motion for Partial Summary Judgment of Non-Infringement of Claim 22 of the '983 Patent [Doc. No. 303] is GRANTED.

Date: February 24, 2013

s/ Michael J. Davis
Michael J. Davis
Chief Judge
United States District Court

---

[1] 3M noted in its opposition brief that if the Court clarified "nominally parallel" consistent with the interpretation of Dr. Leger, it would withdraw claim 22 from this case.